## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **AMANDA REIDT**, *on behalf of herself and all others similarly situated*,<br><br>*Plaintiff*,<br>v.<br><br>**ADVANCED MARKETING AND PROCESSING, INC. D/B/A PROTECT MY CAR**,<br><br>*Defendant*. | Civil Case No.: 23-234<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of the relentless marketing practices of Defendant, Advanced Marketing & Processing, Inc. d/b/a Protect My Car ("PMC" or "Defendant") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2. PMC makes, or has made on its behalf, aggressive, prerecorded telemarketing calls soliciting car warranties.

3. PMC continues to make these calls even after the called party requests that PMC cease calling.

4. Accordingly, Ms. Reidt brings this action on behalf of herself and the classes of similarly situated individuals defined herein.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6. This Court has jurisdiction over PMC because PMC conducts business transactions in this District and PMC made calls into this District, targeting residents of this District, as part of

1

the business it conducts in this District.

7. Venue is proper in this District because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

8. Plaintiff Amanda Reidt ("Ms. Reidt") is, and at all times mentioned herein was, a citizen and resident of Fall Creek, Wisconsin.

9. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant Advanced Marketing & Processing, Inc. d/b/a Protect My Car ("PMC") is, and at all times mentioned herein was, a limited liability company organized under the laws of Florida, with a principal place of business at 570 Carillon Parkway, Suite 300, Saint Petersburg, Florida 33716.

11. PMC may be served via its registered agent, Registered Agents, Inc., 7901 4th Street North, Suite 300, Saint Petersburg, Florida 33702.

12. PMC is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

14. The TCPA provides private rights of action for various types of telemarketing-

related misconduct.

15. Relevant here, section 227(b) of the TCPA prohibits making *any* call (other than a call made for emergency purposes) to a cellular telephone using an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A).

16. A violation of section 227(b) carries statutory damages of $500 to $1,500 per call. *See* 47 U.S.C. § 227(b)(3)(B) and (C).

17. The TCPA's prohibition on the use of artificial or prerecorded voices without the prior express consent of the called party includes the use of "soundboard technology." *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Rules"); 35 FCC 14640, 14640-41 (F.C.C., Dec. 18, 2020).

18. Soundboard technology, also known as "avatar technology," is the use of a digital library of multiple short, prerecorded messages or sound clips that a soundboard can use to communicate with a called party during a call.

19. A person or artificial intelligence selects which prerecorded messages or sound clips to play in response to a called party's responses or inquiries.

20. The Federal Communications Commission ("FCC") has explained that soundboard technology violates the prohibition on using artificial or prerecorded voice messages, even if a live agent is in control of the response:

> **There is no doubt that soundboard technology "uses" a prerecorded voice to deliver a message to the consumer** . . . . As a result, if a live agent initiates the call with a prerecorded voice message using soundboard technology, the caller must obtain the called party's prior express consent. In other words, the mere presence of a live operator with soundboard technology does not negate the clear statutory prohibition against initiating a call using a prerecorded or artificial voice. **Nowhere does the TCPA text**

3

> **exempt calls where a human selects a prerecorded voice message for the called party**.

FCC Rules at 14644 (emphasis added).

21. The use of soundboard technology has drawn many consumer complaints. *See* FCC Rules at 14642-43.

22. For example, consumers complain that during soundboard calls, the consumers often receive inappropriate or nonsensical responses to their questions or comments, no live telemarketer intervenes to provide a human response when requested to do so, the recorded audio clips that are played do not adequately address their questions, and calls abruptly terminate in response to consumer questions or inquiries for which there is not an appropriate recorded response available.[1]

23. In addition, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

24. These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

25. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

26. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

---

[1] Letter from Lois Greisman, FTC to Michael Bills (Nov. 10, 2016) https://www.ftc.gov/system/files/documents/advisory_opinions/letter-lois-greisman-associate-director-division-marketing-practices-michael-bills/161110staffopsoundboarding.pdf (last accessed October 25, 2022)

4

**FACTUAL ALLEGATIONS**

27.     Ms. Reidt is the user of cellular telephone number (XXX)-XXX-7249.

28.     Ms. Reidt's cellular telephone number (XXX)-XXX-7249 is used for residential purposes and is not associated with a business.

29.     Ms. Reidt's telephone number (XXX)-XXX-7249 has been on the National Do-Not-Call Registry since November 10, 2009.

30.     In early 2023, Ms. Reidt began receiving unsolicited telephone calls from PMC, or an agent calling on its behalf and at its direction.

31.     These calls solicited Ms. Reidt to purchase an extended car warranty policy.

32.     At first, Ms. Reidt would advise the callers that she was not interested and instruct the callers not to call again.

33.     PMC, or the agents calling on its behalf and at its direction, continued to call Ms. Reidt, despite her clear instructions.

34.     Ms. Reidt received additional unsolicited calls from PMC on at least the following dates and from the following numbers:

- February 23, 2023 from 262-274-0271;
- March 1, 2023 from 262-270-3584; and
- March 2, 2023 from 262-270-3591.

35.     Ms. Reidt's telephone records and the records of PMC and/or its agents will reveal all of the calls placed to Ms. Reidt's cellular telephone number.

36.     Certain of these calls would use artificial and/or prerecorded voices, and specifically avatar and/or soundboard technology.

37.     For example, during the March 2, 2023 call from 262-270-3591, the female voice

had long, unnatural pauses before responses and certain responses would abruptly be cut off and another response would begin.

38. In an attempt to determine who was responsible for the calls, on March 2, 2023, Ms. Reidt engaged with the caller.

39. Ms. Reidt was transferred to a representative that revealed that the calls were from PMC.

40. Ms. Reidt did not provide prior express invitation or permission or consent for these telephone calls.

41. To the contrary, in response to the unwanted calls, Ms. Reidt repeatedly requested that they stop.

42. PMC's violations were negligent.

43. Alternatively, PMC's violations were willful and knowing.

44. Ms. Reidt and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, the calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls. PMC's telephone calls and text messages were annoying and a nuisance, and wasted the time of Ms. Reidt and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## DEFENDANT'S LIABILITY

45. PMC used automated systems to make outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

46. PMC, made two or more telephone solicitations to Ms. Reidt, whose number was

on the National Do-Not-Call Registry at the time of the calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

47. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Reidt is entitled to $500 per call through 47 U.S.C. § 227(c).

48. Ms. Reidt is entitled to an additional $1,500 per call if PMC's actions are found to be knowing or willful.

49. Certain of these calls utilized an artificial or prerecorded voice in violation of 47 U.S.C. § 227(b).

50. For violations of 47 U.S.C. § 227(b), Ms. Reidt is entitled to a minimum of $500 per call. *See* 47 U.S.C. § 227(b)(3)(B).

51. Ms. Reidt is entitled to $1,500 per call if PMC's actions are found to be knowing or willful. *See* 47 U.S.C. § 227(b)(3)(C).

## CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of three proposed "Classes," as defined as follows:

## THE TCPA CLASSES

Plaintiff and all persons within the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called (2) using an artificial or prerecorded voice message (3) for the same purpose Plaintiff was called.

("Prerecorded Class")

Plaintiff and all persons within the United States to whose telephone number Defendant PMC placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls, from four years prior to the filing of the Complaint through class certification.

7

("Registry Class")

(The Prerecorded Class and the Registry Class are collectively referred to herein as the "Classes.")

53. Excluded from the Classes are PMC and any entities in which PMC has a controlling interest; PMC's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

54. The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

55. The exact number and identities of the persons who fit within the Classes are ascertainable in that PMC and third parties maintain written and electronically stored data showing:

    a. The time period(s) during which PMC or its agent made the telephone calls;

    b. The telephone numbers to which PMC or its agent made telephone calls;

    c. The telephone numbers for which PMC had prior express written consent;

    d. The purposes of such telephone calls; and

    e. The names and addresses of Class members.

56. The Classes are comprised of hundreds, if not thousands, of individuals.

57. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

    a. Whether PMC (or someone acting on its behalf) used an artificial or prerecorded voice in placing its calls;

    b. Whether PMC (or someone acting on its behalf) makes telemarketing calls;

    c. Whether PMC (or someone acting on its behalf) obtains prior express written consent;

    d. Whether PMC or the entity with which it contracts makes solicitation calls to telephone numbers registered on the National Do-Not-Call Registry;

    e. Whether PMC's statutory violations were willful and knowing; and

    f. Whether PMC should be enjoined from engaging in such conduct in the future.

58. Plaintiff is a member of the Classes in that PMC placed two or more calls for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, and while her telephone number was on the National Do-Not-Call Registry. In addition, certain of these calls utilized an artificial or prerecorded voice.

59. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from PMC's uniform conduct and are based on the same legal theories as these claims.

60. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to PMC's unwanted calls and suffered a nuisance and an invasion of their privacy.

61. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

62. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

63. PMC has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

64. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

65. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

66. Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Prerecord Class)

67. Ms. Reidt and the proposed Prerecord Class incorporate the foregoing allegations as if fully set forth herein.

68. PMC placed, or had placed on its behalf, prerecorded telephone calls to Ms. Reidt's. and Class Members' telephone numbers without prior express written consent.

69. The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b).

70. PMC has therefore violated 47 U.S.C. § 227(b).

71. As a result of PMC's unlawful conduct, Ms. Reidt and the Class Members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

72. Ms. Reidt and the Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 277(b)(3).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
**(On behalf of Plaintiff and the Registry Class)**

73. Ms. Reidt and the proposed Registry Class incorporate the foregoing allegations as if fully set forth herein.

74. PMC made, or had made on its behalf, calls constituting telephone solicitations to Ms. Reidt's and putative Registry Class Members' telephone numbers.

75. Ms. Reidt's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

76. Ms. Reidt and putative Registry Class Members each received two or more such calls in a 12-month period.

77. Ms. Reidt and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

78. Ms. Reidt and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Ms. Reidt as the representative of the Classes and appointing counsel as Class Counsel;

B. An order declaring that PMC's actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the

interests of the Classes, including, *inter alia*, an order prohibiting PMC from engaging in the wrongful and unlawful acts described herein;

      D.      An award of statutory damages;

      E.      An award of treble damages; and

      F.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** April 17, 2023

                                            s/ *Max S. Morgan*
Eric H. Weitz, Esquire
Max S. Morgan, Esquire
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com